**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Ted Baker Canada Inc., *et al.*,[1] | Case No. 24-10699-MEW |
| Debtors in a Foreign Proceeding. | Jointly Administration Requested |

**DECLARATION OF ANTOINE ADAMS IN SUPPORT OF**
**VERIFIED PETITION FOR ENTRY OF AN ORDER RECOGNIZING**
**FOREIGN MAIN PROCEEDINGS AND GRANTING ADDITIONAL RELIEF**

I, Antoine Adams, hereby declare:

1.      I am the director and Corporate Secretary of each of Ted Baker Canada Inc. ("Ted Baker Canada"), Ted Baker Limited, OSL Fashion Services Canada Inc. ("Fashion Canada"), and OSL Fashion Services, Inc. ("Fashion Services," and together, with Ted Baker Canada, Ted Baker Limited, and Fashion Service, the "Company" or the "Debtors"), residing in Toronto, Canada.

2.      Ted Baker Canada is the duly authorized foreign representative ("the "Foreign Representative") of the Debtors, which are the subject of jointly-administered proceedings (the "Canadian Proceedings") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Ontario Superior Court of Justice (the "Canadian Court") in Toronto, Ontario, Canada.

3.      The Canadian Proceedings were commenced on April 24, 2024 and, that same day, the Canadian Court entered its Initial Order (the "Initial Order"), a true copy of which

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Number ("BN"), are: Ted Baker Canada Inc. (BN 3889); Ted Baker Limited (FEIN 3341); OSL Fashion Services, Inc. (FEIN 1225); and OSL Fashion Services Canada (BN 7745).

DocuSign Envelope ID: BC93A9CD-985F-4905-AB5C-79D3AA624555

is attached hereto as **Exhibit A**, granting the Debtors certain relief under the CCAA and appointing

Ted Baker Canada as the "foreign representative" authorized to apply for recognition of the

Canadian Proceedings as foreign proceedings within the United States. The Initial Order also

appointed Alvarez & Marsal Canada Inc. ("A&M") as monitor to the Debtors in the Canadian

Proceedings and authorized the joint administration of the Canadian Proceedings.

        4.      Contemporaneously with the filing of this declaration, Ted Baker Canada

caused to be filed, on behalf of the Debtors as authorized Foreign Representative of the Debtors,

petitions for recognition of the Canadian Proceedings in the United States under chapter 15 of title

11 of the United States Code (the "Bankruptcy Code"), thereby commencing the Debtors' chapter

15 cases (the "Chapter 15 Cases"). Ted Baker Canada also caused to be filed the *Verified Petition*

*for Entry of Order Recognizing Foreign Main Proceedings and Granting Additional Relief* (the

"Petition for Recognition") and the *Motion of Ted Baker Canada Inc. as Foreign Representative*

*of Ted Baker Canada Inc. and Certain of its Affiliates for an Order Granting Provisional Relief*

(the "Provisional Relief Motion").

        5.      This declaration is filed in support of the Petition for Recognition, the

Provisional Relief Motion and the other "first day" relief requested by the Foreign Representative.

I am making this declaration in accordance with section 1515 of the Bankruptcy Code and Rule

1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

        6.      I am familiar with the Debtors' history, day-to-day operations, assets,

financial condition, business affairs and books and records. Except as otherwise indicated, all

statements in this declaration are based upon (a) my personal knowledge, (b) my review of the

Debtors' books and records, relevant documents and other information prepared or filed in

connection with the Canadian Proceedings and the Chapter 15 Cases, (c) information supplied to

DocuSign Envelope ID: BC93A9CD-985F-4905-AB5C-79D3AA624F55

me by the officers and employees of the Debtors or other professionals retained by the Debtors or (d) my experience and knowledge of the Debtors' operations and financial condition. If called to testify as a witness, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents or opinion. I am authorized to submit this declaration on behalf of the Debtors.

## **INTRODUCTION**

7.    The Debtors operate a fashion clothing retail, wholesale and e-commerce business under the TED BAKER banner in Canada and the United States. The Company's business operations in Canada are conducted through Ted Baker Canada, and, in the United States through Ted Baker Limited. Ted Baker Canada also conducts retail, wholesale and e-commerce operations under the BROOKS BROTHERS and LUCKY BRAND banners, solely in Canada.

8.    The Debtors first entered the North American retail fashion clothing industry in early 2023. This was accomplished initially through the acquisition of all of the issued and outstanding equity interests of Ted Baker Canada and Ted Baker Limited by Fashion Canada and Fashion Services, respectively, from No Ordinary Designer Label Limited ("NODL"), an affiliate of Authentic Brands Group ("ABG"), pursuant to a Purchase Agreement (defined below) (the "Ted Baker Acquisition"). ABG is a global brand management company that, among other things, owns and licenses over 50 different consumer brands.  Concurrently, Ted Baker Canada and Ted Baker Limited, as licensees, entered into a license agreement with NODL, as licensor, whereby NODL granted Ted Baker Canada and Ted Baker Limited an exclusive license to, among other things, use the TED BAKER marks and sell TED BAKER branded merchandise in Canada and the US.

9.    The Ted Baker Acquisition was followed by two further acquisitions in August 2023 whereby Ted Baker Canada acquired certain assets in Canada relating to the LUCKY

3

BRAND brand and certain assets in Canada relating to the BROOKS BROTHERS brand, including licensed inventory and the exclusive license to, among other things, use the LUCKY BRAND and BROOKS BROTHERS marks and sell LUCKY BRAND and BROOKS BROTHERS branded merchandise in Canada (the "Lucky Brand and Brooks Brothers Acquisition" and, together with the Ted Baker Acquisition, the "Acquisitions").

10.     Unfortunately, since the Acquisitions and the commencement of retail fashion operations, the Debtors' financial and operational performance has struggled, and the consolidated business has failed to achieve positive cash flow. Over the last year, Ted Baker Canada and Ted Baker Limited (together, "Ted Baker NA") have underperformed relative to budget and revenues have significantly declined. This has been caused principally by (i) failures by ABG's operating partners in Europe and elsewhere to make payments to suppliers in the Ted Baker supply chain, including payments on behalf of Ted Baker NA, which led to these suppliers holding shipments and/or short shipping to Ted Baker NA, creating delays in receiving merchandise for the critical winter season, cancellation of orders by some of Ted Baker NA's wholesale partners, and causing Ted Baker NA to lack the appropriate merchandise levels and product mix; (ii) suppliers of Ted Baker NA accelerating payment terms in the lead up to and as a result of NODL's administration process in the UK (set out in greater detail below); (iii) the transition from the existing technology platform (referred to as a "Tech Stack") used by Ted Baker NA to a new Tech Stack during the busiest selling season, which exacerbated the supply delays experienced by Ted Baker NA; (iv) certain requirements imposed by ABG to change the Ted Baker website URL from tedbaker.com to tedbaker.us, which significantly impeded sales from, and disrupted relationships with, the Debtors' online customer base; and (v) generally poor sales performance at Ted Baker NA.

4

DocuSign Envelope ID: 8C93A9CD-985F-4905-AB5C-79D3AA624555

11.     For the 11 months ended December 31, 2023, Ted Baker NA significantly underperformed expectations, generating sales and EBITDA of USD $145 million and USD ($5.3) million, respectively, and a net loss of over USD $11.3 million. During January through April YTD 2024, Ted Baker NA has generated negative cash flow of over USD $5 million.

12.     The negative cash flow and working capital issues have caused a strain on the borrowing base under the Debtors' Existing Credit Agreement (defined below), resulting in an over advance position on the borrowing base, such that at present there is no availability to make additional draws under such facility, with the Debtors being unable to pay their obligations in the ordinary course.  Further, the Senior Lender (defined below) under the Existing Credit Agreement currently has full sweep rights under the Canadian Bank Accounts (each, defined below) and has established or is establishing DACAs (defined below) in respect of the US Bank Accounts (defined below). As of the date of this declaration, the Debtors have approximately USD $1.2 million in their bank accounts and approximately USD $4 million in payments that are required to be made in the next several days, including payroll.

13.     The Debtors' liquidity constraints have also resulted in significant arrears owing to certain vendors, including: (i) in excess of USD $2 million owing to ABG as of April 1, 2024, pursuant to the License Agreements (defined below) (the "Missed April Payments"); (ii) in excess of three months' arrears (USD $2.3 million) owing to Future Forwarding (defined below), the Debtors' primary third-party warehouse distribution provider, who is in possession of more than USD $20 million in Ted Baker NA inventory; (iii) certain sales tax arrears owing to the CRA (defined below); and (iv) in excess of USD $14 million owing to merchandise vendors and critical logistics and IT vendors.

5

14.     Over the past several months, the Debtors have reduced spending, offered more aggressive consumer trade offers at their retail stores, and attempted to negotiate with ABG to address some of these unexpected transition-related issues, preserve capital and address their dwindling liquidity position. Unfortunately, these efforts have been unsuccessful, and Ted Baker NA has continued to struggle to revive their sale performance following the supply delays and other issues noted above.

15.     On April 17, 2024, Ted Baker Limited and Ted Baker Canada received Notices of Breach from ABG as a result of the Missed April Payments. The License Agreements provide for a five business day cure period.

16.     In light of their current financial crisis, including the liquidity constraints that have resulted in significant arrears owing to certain vendors, the potential termination of the License Agreements, and the potential cessation of shipments by the Debtors' third-party warehouse distribution provider as a result of the arrears, the Debtors sought protection under the CCAA and Chapter 15 of the Bankruptcy Code to enforce the Canadian Proceedings in the US.

17.     The Debtors intend to use the breathing room afforded by the CCAA and the chapter 15 proceedings, and the funding that will only be available to them within the CCAA and the chapter 15 proceedings, to engage with their principal stakeholders and to consider the best manner in which to monetize their assets, including potentially a liquidation and orderly wind-down of their operations or other value-maximizing alternatives.

## **BACKGROUND**

### A.     **Corporate Structure**

18.     A corporate chart depicting the structure of the Debtors following the Acquisitions is set out below.

6



19.    Ted Baker Canada is a limited company incorporated pursuant to the laws of Nova Scotia, and continued pursuant to the laws of Ontario. Ted Baker Canada is a wholly-owned subsidiary of Fashion Canada. Its head office is located at 5090 Orbitor Drive, Unit 1, Mississauga, Ontario.

20.    Ted Baker Limited is a limited company incorporated pursuant to the laws of New York. Its head office is located at 54 West 21st Street, 11th floor, in New York. Ted Baker Limited is a wholly-owned subsidiary of Fashion Services.

21.    Fashion Canada is a company incorporated pursuant to the laws of Ontario. Its head office is located at 5090 Orbitor Drive, Unit 1, Mississauga, Ontario.  Fashion Canada owns 100% of the shares of Ted Baker Canada.

22.    Fashion Services is a company incorporated pursuant to the laws of Michigan.  Its head office is also located at 580 Haddonfield Road, Cherry Hill, New Jersey. Fashion Services owns 100% of the shares of Ted Baker Limited.

67719/0001-47558774v2

DocuSign Envelope ID: BC93A9CD-985F-4905-AB5C-79D3AA624565

**B.    The Business of the Debtors**

**(a)    Overview**

23.    As described in greater detail below, all or substantially all of the key operational and strategic and corporate decision-making relating to the Debtors' business is performed by and through Fashion's head office in Mississauga, Ontario, principally through myself (as Corporate Secretary) and Mr. Brett Farren (as President). These functions include, among other things, executive, M&A and strategic corporate, and approval of material financial decisions for all of the Debtors, including Ted Baker Limited (which, for clarity, has its own executive leadership team based in New York led by CEO Ari Hoffman, but which ultimately reports to me and Mr. Farren). In addition, Mr. Domenic Ieraci, an independent contractor based in Toronto, performs key financial advisory services for all the Debtors.  Moreover, IT leadership for the Debtors, including strategy, development, implementation, and people management, is performed by employees of Fashion's head office in Mississauga.

24.    The Debtors operate their business in Canada and the US through four main retail segments: (i) retail stores, (ii) wholesale, (iii) concession locations within other retail stores, and (iv) e-commerce.

**(i)    Retail Stores**

25.    As more fully described below, the Debtors conduct their business through 25 retail store locations in Canada and 34 retail store locations in the US. The following chart sets out the current store locations by store type and geographical region:

| Province/State | Full-Line | Outlet |
|---|---|---|
| *Canada* | | |

DocuSign Envelope ID: 8C38A9CD-985F-4905-AB5C-79D3AA624F55

| Province/State | Full-Line | Outlet |
|---|---|---|
| *Ontario* | 4 (Ted Baker)<br>1 (Lucky Brand)<br>3 (Brooks Brothers) | 1 (Ted Baker)<br>2 (Lucky Brand)<br>3 (Brooks Brothers) |
| *Quebec* | 1 (Ted Baker) | |
| *Alberta* | 1 (Ted Baker)<br>2 (Brooks Brothers) | 1 (Lucky Brand) |
| *British Columbia* | 1 (Ted Baker)<br>1 (Lucky Brand) | 1 (Ted Baker)<br>1 (Lucky Brand)<br>1 (Brooks Brothers) |
| *Manitoba* | | 1 (Lucky Brand) |
| ***Subtotal*** | **14** | **11** |
| ***United States (all Ted Baker stores)*** | | |
| *New York* | 4 | 1 |
| *Michigan* | 1 | |
| *California* | 6 | 3 |
| *Florida* | 4 | 3 |
| *Texas* | 3 | |
| *Georgia* | 1 | |
| *Washington* | 1 | |
| *Nevada* | 2 | 1 |
| *Pennsylvania* | 1 | |
| *Hawaii* | 1 | |
| *Illinois* | | 1 |
| *Massachusetts* | | 1 |
| ***Subtotal*** | **24** | **10** |
| ***Total*** | **38** | **21** |

67719/0001-47558774v2

DocuSign Envelope ID: 8C63A9CD-985F-4905-AB5C-79D3AA624555

(ii)      **Wholesale**

26.      Ted Baker Canada and Ted Baker Limited are party to agreements with certain wholesale customers pursuant to which Ted Baker NA sells TED BAKER branded products in bulk to these wholesale customers, who then sell the licensed products to their retail customers through their own employees and websites (the "Wholesale Customers").

27.      At present, Ted Baker Limited's Wholesale Customers include Nordstrom, Dillard's, Macy's, and Bloomingdales and Ted Baker Canada's primary Wholesale Customer is Hudson's Bay.

(iii)     **Concession Locations**

28.      Ted Baker Canada and Ted Baker Limited are also party to license agreements with *Hudson's Bay* in Canada, and *Bloomingdales* and *Macy's* in the US (collectively, the "Concession Parties"), pursuant to which Ted Baker Canada or Ted Baker Limited, respectively, is granted a non-exclusive license to operate concession locations at applicable retail stores of the Concession Parties and sell certain TED Baker merchandise to customers of the Concession Parties. Ted Baker Canada operates six concession locations at *Hudson's Bay* in Canada and Ted Baker Limited operates 31 concession locations in *Bloomingdales* and one (1) in *Macy's* in the US. The Debtors own the inventory that is sold at the concession locations.

29.      The Debtors either directly supply employees to the Concession Parties, or pay to the Concession Parties an amount for employee compensation, to sell the licensed inventory at the concession locations. There are certain offsets charged by the Concession Parties, including for commission, e-commerce, and other marketing programs, and the Debtors utilize the POS systems of the Concession Parties at each concession location.

67719/0001-47558774v2

(iv)    **E-Commerce Operations**

30.    The Ted Baker e-commerce business is conducted through tedbaker.us in the United States and tedbaker.ca in Canada.

**C.    Leases and Landlords**

31.    All of the Debtors' retail store operations are conducted in leased facilities with various third-party landlords (the "Landlords"), as follows:

| Landlord Group | Number of Store Locations |
|---|---|
| *Canada* | |
| Oxford Properties | 2 Full-Line |
| Cadillac Fairview | 7 Full-Line |
| Central Walk | 2 Full-Line |
| Ivanhoe Cambridge | 1 Full-Line |
| JLL | 1 Full-Line, 4 Outlet |
| Cushman & Wakefield | 1 Full-Line |
| Cameron Dev. Corp | 1 Full-Line |
| Simon Properties | 3 Outlet |
| Templeton DOC Limited Partnership | 1 Outlet |
| Tanger | 1 Outlet |
| *United States* | |
| Two Trees Management Co | 1 Full-Line |
| Forbes Taubman | 1 Full-Line |
| Westfield | 1 Full-Line |
| Simon Properties | 6 Full-Line, 9 Outlet |
| Schur Management | 1 Full-Line |
| Bellevue Square, LLC | 1 Full-Line |
| A/R Retail LLC | 1 Full-Line |
| FRIT | 1 Full-Line |
| Northpark Partners LP | 1 Full-Line |
| South Coast Plaza | 1 Full-Line |

67719/0001-47558774v2

DocuSign Envelope ID: 2C63A9CD-985F-4905-AB5C-79D3AA624F55

| Landlord Group | Number of Store Locations |
|---|---|
| Aventura Mall Venture | 1 Full-Line |
| 595 Fifth Ave. Corp | 1 Full-Line |
| Brookfield Properties | 3 Full-Line |
| CBRE Asset Services | 1 Full-Line |
| Macerich | 1 Outlet |

32.     The Debtors also maintain two warehouse locations, one in Ontario and one in Georgia.

**D.     Employees**

33.     As of April 19, 2024, Ted Baker Canada employs 58 full-time and 72 part-time employees who service the Ted Baker business in Canada and Ted Baker Limited employs 251 full-time and 97 part-time employees who service the Ted Baker business in the U.S. None of the employees are unionized.

34.     As of the same date, 19 full-time and 43 part-time employees service the Lucky Brand business and 32 full-time and 52 part-time employees service the Brooks Brothers business, all of whom are based in Canada and employed by Ted Baker Canada. None of the employees are unionized.

35.     In addition, certain employees of OSL Retail Services Inc. ("Retail"), an affiliate of the Debtors, which are based out of Ontario, Canada, provide executive management and IT services to Ted Baker Limited. Retail is not a Debtor in Canadian Proceedings or these proceedings. Approximately USD $1.3 million is invoiced annually to Ted Baker Limited by Retail on account of the executive services provided by such employees to Ted Baker Limited and approximately USD $1.1 million is invoiced to Ted Baker Limited by Retail in respect of the IT employees who provide services to Ted Baker Limited.

67719/0001-47558774v2

### E.    Merchandising and Sourcing

36.    The sourcing and purchasing of merchandise for both Ted Baker Canada and Ted Baker Limited is conducted by the Ted Baker NA team based in the New York office. All purchase orders made by the Ted Baker NA team are submitted to PDS Limited ("PDS"), one of the Debtors' operating partners.

37.    Pursuant to a buying agency agreement between the Debtors and PDS, PDS is responsible globally for design, procurement and maintaining relationships with suppliers and manufacturers for the TED BAKER brand. PDS designs and sources the merchandise from the manufacturers, who then send purchase orders to Ted Baker NA, who approve those purchase orders and submit them back to the applicable manufacturers for production. The manufacturers then process the orders. The Debtors pay PDS a 10% fee for their services. Once the merchandise has been delivered to the freight forwarder, title passes to Ted Baker Limited. Ted Baker Limited is responsible for bringing the goods to Ted Baker NA's primary distribution center in Atlanta (the "Distribution Center"), and distributing the goods to the retail stores, concession locations and Wholesale Customers.  As of the date of this affidavit, there is approximately $2.6 million in inventory in transit (inclusive of unpaid duties).

38.    Wholesale Customers place orders for TED BAKER merchandise on a sales portal called Nu Order, following which orders are routed to the Distribution Center and Ted Baker NA processes these orders on behalf of each store.

39.    E-commerce orders are placed through tedbaker.us and tedbaker.ca, which are fulfilled directly through the Distribution Center.

40.    The Distribution Center is managed and operated by Future Forwarding Company ("Future Forwarding") pursuant to a Warehousing, Storage and Logistics Agreement

67719/0001-47558774v2

DocuSign Envelope ID: DC93A9CD-985F-4905-AB5C-79D3AA624555

dated October 19, 2017 (the "Future Agreement"). Future Forwarding is responsible for, among other things, receipt of inbound deliveries, put away and storage, dispatch of orders, order returns/cancellations, and consumables. As of the date of this affidavit, approximately 20% of the inventory in the Distribution Center is designated to Ted Baker Canada with the remainder designated to Ted Baker Limited.

41.    For the BROOKS BROTHERS brand, all merchandise is sourced from SPARC Group, LLC ("SPARC") and for LUCKY BRAND, 90% of the merchandise is sourced from SPARC and 10% is sourced by Ted Baker Canada from various manufacturers. SDR Distribution Services Inc. ("SDR") provides third-party logistics services to Ted Baker Canada for the BROOKS BROTHERS and LUCKY BRAND business.

42.    It is vital to the preservation of the value of the estate that the Debtors continue their relationship with Future Forwarding and SDR without disruption to ensure that merchandise continues to flow to Ted Baker NA's retail stores and Wholesale Customers during the CCAA proceedings and the Chapter 15 Cases.

**F.    Management Services and Other Shared Services**

43.    Although there is no formal agreement in place related to shared services, as noted above, the Debtors rely on employees of Retail for certain executive and operational leadership, strategy, M&A, financial decision approvals and IT services, primarily from Retail's head office in Mississauga (together, the "Management Services"). The Management Services are integral to the Debtors' operations. As noted above, amounts are invoiced annually to Ted Baker Limited by Retail on account of the Management Services provided by such employees to Ted Baker Limited. The Debtors cannot operate or function, and a restructuring within these proceedings could not occur, without the provision of the Management Services.

67719/0001-47558774v2

### G.    License Agreements

44.    All of the Debtors' inventory is licensed pursuant to various license agreements (collectively, the "License Agreements"), as described below.   These license agreements are confidential and may contain commercially sensitive information and therefore, are not attached as exhibits to this Declaration.

### (i)    NODL License Agreement

45.    Ted Baker Canada and Ted Baker Limited, as Licensee, are parties to a License Agreement, effective March 13, 2023 (the "Effective Date", being the date of the closing of the Purchase Transaction whereby Fashion Canada and Fashion Services acquired the equity interests of Ted Baker Canada and Ted Baker Limited, respectively), with NODL, a private limited corporation organized in England and Wales and subsidiary of ABG, as Licensor (as amended, the "NODL License Agreement"). The NODL License Agreement has an Initial Term beginning on the Effective Date and ending on December 31, 2033.

46.    The Licensee is required to sell the Ted Baker inventory, being the Licensed Products, in Canada and the United States in accordance with the terms of the License Agreement. The "Licensed Property" is defined as the rights in and to the TED BAKER trademarks for Canada and the US, which are supported by the registered trademarks at Schedule A to the NODL License Agreement. The "Licensed Products" include the following product categories that are manufactured by or on behalf of the Licensor and/or its designated third-party licensees and/or suppliers: sportswear apparel, outerwear apparel, men's dress shirts, women's dresses, fashion handbags, footwear, casual bags and backpacks, small leather goods, belts, cold weather accessories, hats and swimwear.

47.     On the Effective Date, the Licensee was required to pay USD $8 million to NODL, which represented 50% of the Guaranteed Minimum Royalties ("GMR") payable to NODL for the first year of the NODL License Agreement. Pursuant to Amendment No. 1 to the NODL License Agreement, effective March 21, 2023, the remaining balance for the period from January 1, 2024 to December 31, 2024 is to be paid as follows: (a) USD $1,818,085 million on or before January 1, 2024; (b) USD $1,818,085 million on or before April 1, 2024; (c) USD $1,818,085 million on or before July 1, 2024; and (d) USD $1,818,085 million on or before October 1, 2024.

48.     As described in further detail below, the Licensee failed to make the payment of USD $1,818,085 million that was due to the Licensor on April 1, 2024.

49.     The NODL License Agreement contemplates Retail providing an absolute, irrevocable and unconditional guarantee (the "Retail Guarantee") to NODL of all of the financial, indemnity and payment obligations of the Licensee; provided, however, solely and specifically with respect to the Royalty & GMR Obligations (as defined therein), Retail would not be required to guarantee and otherwise pay Royalty & GMR Obligations in excess of USD $8 million.

50.     Effective January 1, 2024, Ted Baker Canada, Ted Baker Limited, and ABG UK (as successor in interest to NODL) entered into Amendment No. 3 to the NODL License Agreement, which provided that the e-commerce websites for Ted Baker inventory specified in the NODL License Agreement would be located at: (A) www.tedbaker.us in the United States and (B) www.tedbaker.ca in Canada.

### (ii)    Ted by Ted Baker License Agreement

51.     Ted Baker Canada and Ted Baker Limited are also parties to another License Agreement, effective January 1, 2024, as Licensee, with ABG-UK, a private limited

67719/0001-47558774v2

corporation organized in England and Wales and affiliate of ABG, as Licensor (as amended, the "Ted by Ted Baker License Agreement"). Pursuant to the Ted by Ted Baker License Agreement, the Licensee is permitted to sell additional Licensed Products, including the following product categories: sportswear apparel products and denim apparel products, for an Initial Term starting on the Effective Date and ending on December 31, 2029, in Canada and the United States.

52.     The Licensee is required to pay a GMR of USD $500,000 to the Licensor as follows: (a) USD $250,000 on or before July 1, 2024; and (b) USD $250,000 on or before July 1, 2025.

**(v)     Lucky Brand and Brooks Brothers License Agreements**

53.     Effective April 1, 2023, in anticipation of the acquisition of all of the assets of the Lucky Brand and Brooks Brothers retail business in Canada (described above), Ted Baker Canada entered into two separate License Agreements for the LUCKY BRAND and BROOKS BROTHERS Licensed Property with ABG-Lucky, LLC and BB IPCO, LLC, respectively (the "Lucky Brand License Agreement" and the "Brooks Brothers License Agreement," and together with the NODL License Agreement, the "License Agreements").

54.     The Lucky Brand License Agreement and the Brooks Brothers License Agreement each provide Ted Baker Canada with the limited, non-exclusive right to use the Licensed Property (as defined in each of those Agreements) in connection with the initial design, development, production and manufacture of the Licensed Products (as defined in each of those Agreements) to be produced by or on behalf of Ted Baker Canada and ultimately sold and shipped in Canada in accordance with these License Agreements, after January 1, 2024.

55.     Pursuant to the Lucky Brand License Agreement, Ted Baker Canada was required to pay the Licensor USD $137,500 within five business days of signing the License

Agreement, representing 25% of the GMR payable for the first year of the Lucky Brand License Agreement. The remaining balance of the GMR payments for the period December 1, 2023 to December 31, 2024 is due and payable as follows: (a) USD $103,125 on or before December 1, 2023; (b) USD $103,125 on or before April 1, 2024; (c) USD $103,125 on or before July 1, 2024; and (d) USD $103,125 on or before October 1, 2024.

56.    In connection with the Lucky Brand License Agreement, Retail has given an absolute, irrevocable and unconditional guarantee (the "Retail Guarantee to ABG-Lucky") to ABG-Lucky, LLC of all of the financial, indemnity and payment obligations (e.g, Royalty, CMF, CMR, Minimum CMF) of the Licensee specifically for Contract Year 1 (2023/2024). An unsigned copy of the Retail Guarantee to ABG-Lucky is attached as Schedule C to the Lucky Brand License Agreement.

57.    Pursuant to the Brooks Brothers License Agreement, Ted Baker Canada was required to pay the Licensor USD $125,000 within five business days of signing the License Agreement, representing a portion of the GMRs payable for the first year of the Brooks Brothers License Agreement. The remaining balance of the GMR payments for the period December 1, 2023 to December 31, 2024 is due and payable as follows: (a) USD $93,750 on or before December 1, 2023; (b) USD $93,750 on or before April 1, 2024; (c) USD $93,750 on or before July 1, 2024; and (d) USD $93,750 on or before October 1, 2024.

58.    In connection with the Brooks Brothers License Agreement, Retail has given an absolute, irrevocable and unconditional guarantee (the "Retail Guarantee to BB IPCO, LLC") to BB IPCO, LLC of all of the financial, indemnity and payment obligations (e.g, Royalty, CMF, CMR, Minimum CMF) of the Licensee specifically for Contract Year 1 (2023/2024).

67719/0001-47558774v2

DocuSign Envelope ID: 8C93A9CD-985F-4905-AB5C-79D3AA624F65

59.    Ted Baker Canada has not made the payments of USD $103,125 and USD $93,750 that were due to each of the Licensors on April 1, 2024.

### iii.    Retail Software Agreement

60.    Ted Baker Canada and Ted Baker Limited are parties to a license agreement with Retail, effective March 14, 2023, whereby Retail licenses certain Software, as described in Exhibit A to the agreement, including Retail's Tech Stack (which is currently in development), to Ted Baker NA for the Ted Baker business (the "Software Agreement").

### H.    Transition Services Agreements

61.    On March 14, 2023, in connection with the Ted Baker Acquisition, Ted Baker Limited and Ted Baker Canada, as the Acquired Companies, and Fashion Services and Fashion Canada, as Buyer, entered into a Transition Services Agreement with NODL, as Seller (the "Ted Baker TSA"). Pursuant to the Ted Baker TSA, the Seller agreed to provide the Acquired Companies with certain services to assist with an orderly transition of the Ted Baker business in exchange for the fees set forth on the Service Exhibit to the Ted Baker TSA, paid pursuant to monthly invoices delivered by the Seller to the Buyer, on behalf of the Acquired Companies. The services provided by the Seller are set out in Exhibit A to the Ted Baker TSA, as follows: merchandising, finance, sales channel: E-Comm, WHS, CRM, supply chain / warehousing, and IT. The Ted Baker TSA has effectively expired and payments have not been made under the Ted Baker TSA since September 2023.

62.    On July 29, 2023, Ted Baker Canada entered into Transition Services Agreements with each of the sellers in the Lucky Brand and Brooks Brothers transactions, YM Inc. (Sales) ("YM") and Jaytex Group (Sales) ("Jaytex"), respectively (the "Lucky Brand TSA" and the "Brooks Brothers TSA"). Pursuant to the Lucky Brand TSA and Brooks Brothers TSA,

each of YM and Jaytex has agreed to provide Ted Baker Canada with certain services to assist with an orderly transition of the Lucky Brand and Brooks Brothers businesses to Ted Baker Canada in exchange for a 3.5% Service Fee of the monthly Net Sales of the Licensed Products sold by Ted Baker Canada (which was subsequently increased to 5% for April and May 2024). The services provided by YM and Jaytex are set out in Exhibit A to each of the Lucky Brand TSA and Brooks Brothers TSA, as follows: merchandising / buying, finance, sales channel (ecommerce), supply chain / warehousing, IT, and reporting.

63.     Pursuant to the Lucky Brand and Brooks Brothers TSAs, each of YM and Jaytex controls the cash management and the merchandise purchasing for each business. Each Seller controls all sales collections and remits payments on behalf of Ted Baker Canada for rent, logistics, merchandise and other miscellaneous costs (excluding payroll). The Lucky Brand and Brooks Brothers TSAs expire on May 31, 2024, at which point all cash management and other responsibilities will be transferred to Ted Baker Canada.

**I.      Gift Cards**

64.     Ted Baker customers in Canada and the US can purchase gift cards to be redeemed for merchandise in Ted Baker stores or on the Ted Baker websites. The gift cards are sold in Ted Baker retail stores.  The Debtors intend on continuing to honor gift cards sold prior to the filing of these proceedings but will not be selling any further gift cards on or after the filing date.

65.     As of April 19, 2024, Ted Baker customers had outstanding gift cards worth a total value of approximately CAD $174,000 in Canada USD $277,000 in the US.

**J.      Banking and Cash Management System**

66.     The Debtors have a centralized cash management system for the collection, transfer and disbursement of funds (the "Cash Management System"), which is maintained and

administered by treasury and finance personnel based in Fashion's head office in Mississauga, Ontario and Ted Baker Limited's head office in New York.

67.     The Cash Management System has several functions, comprised of: (a) collection of funds generated by the store network and e-commerce websites; (b) collection of accounts receivable from third parties, including net receivables pursuant to the Lucky Brand and Brooks Brothers TSAs; (c) disbursements to fund payroll and benefits, inventory purchases, capital expenditures and other goods and services providers; (d) payments under the License Agreements; (e) intercompany cash transfers between Ted Baker Canada and Ted Baker Limited to fund operating disbursements and to settle open balances as among the parties; and (f) drawings and repayments under the Existing Credit Facility.

68.     As described above, certain cash management activities are undertaken by the Sellers in the Lucky Brand and Brooks Brothers transactions pursuant to the respective TSAs. Prior to the commencement of these proceedings, these cash management activities were intended to be transferred to the Debtors on or around May 31, 2024.

69.     The Debtors maintain and administer 45 bank accounts.  Forty-one (41) bank accounts are held in Canada at Canadian Imperial Bank of Commerce ("CIBC") and four are held in the US, comprising three at HSBC and one at American Savings Bank. The balance outstanding under the Existing Credit Facility is paid down on a daily basis through the automatic sweeping of certain Canadian Bank Accounts. CIBC has established or is in the process of establishing a deposit account control agreement ("DACA") in respect of the US Bank Accounts.

70.     Ted Baker Limited periodically transfers funds in its account with American Savings Bank – Ted Hawaii Account ("Hawaii Account") to its account with HSBC Bank USA – Ted US Main Concentration ("Main HSBC Account"). The Main HSBC Account is subject to a

DocuSign Envelope ID: BC93A9CD-985F-4905-AB5C-79D3AA624F55

blocked account control agreement in favour of CIBC pursuant to which funds that are concentrated therein are automatically remitted by HSBC Bank USA to CIBC at the end of each business day and applied against the obligations owing to CIBC under the Existing Credit Facility (the "**Blocked Account Arrangement**").

71.     In connection with these CCAA proceedings, the Debtors are seeking the authority to continue their Cash Management System described above to maintain the funding and banking arrangements already in place for the Debtors.  Any disruption to the Cash Management System would be extremely detrimental to the Debtors' operations in Canada and the US.

## **FINANCIAL POSITION OF THE DEBTORS**

72.     As a private company, the Debtors maintain internal, unaudited consolidated and standalone balance sheets for Ted Baker NA.

### A.     Assets

73.     As of December 31, 2023, Ted Baker Canada had combined total assets of $19,441,019, consisting of $16,388,734 in total current assets, $2,903,668 in total fixed assets and $148,618 in total other assets.

74.     As of December 31, 2023, Ted Baker Limited had combined total assets of USD $88,205,318, consisting of USD $49,046,494 in total current assets, USD $6,792,321 in total fixed assets and USD $32,366,503 in total other assets.

### B.     Liabilities

75.     As of December 31, 2023, Ted Baker Canada had total liabilities of $21,072,232, consisting of $17,912,104 in total current liabilities and $3,160,128 in total long-term liabilities.

67719/0001-47558774v2

DocuSign Envelope ID: BC93A9CD-985F-4005-AB5C-79D3AA624E55

76.     As of December 31, 2023, Ted Baker Limited had total liabilities of USD $47,648,768, consisting of USD $23,465,107 in total current liabilities and USD $24,183,661 in total long-term liabilities.

### C.     Owner's Equity

77.     As of December 31, 2023, Ted Baker Canada's owner's equity totaled negative $1,631,212.

78.     As of December 31, 2023, Ted Baker Limited's owner's equity totaled USD $40,556,551.

## DEBTORS' CAPITAL STRUCTURE

### D.     Existing Credit Agreement

79.     Pursuant to a credit agreement dated March 14, 2023 and as amended on August 3, 2023 and on April 23, 2024 (the "Existing Credit Agreement") between and among Ted Baker Canada, as borrower (in such capacity, the "Canadian Borrower"), and Ted Baker Limited, as borrower (in such capacity, the "US Borrower" and, together with the Canadian Borrower, the "Borrowers") as borrowers, and Fashion Canada, as guarantor (in such capacity, the "Canadian Guarantor") and Fashion Services (in such capacity, the "US Guarantor" and, together with the Canadian Guarantor, the "Guarantors" and together with the Borrowers, the "Credit Parties") and CIBC (the "Senior Lender" or the "Agent"), the Senior Lender provides revolving loans to the Borrowers of up to USD $36.5 million (the "Existing Credit Facility"). The Existing Credit Agreement matures on March 14, 2027.

80.     The Credit Parties entered into the Existing Credit Agreement on March 14, 2023 to fund, in part, the purchase of the equity interests of Ted Baker Canada and Ted Baker Limited. On August 3, 2023, the Senior Lender and the Credit Parties entered into a consent and first amendment to the Existing Credit Agreement which, *inter alia*, increased the maximum

67719/0001-47558774v2

DocuSign Envelope ID: BC93A9CD-985F-4905-AB5C-79D3AA634565

availability to fund the Canadian Borrower's acquisition of the assets, property and undertakings of the Lucky Brand and Brooks Brothers retail businesses in Canada. On April 24, 2024, the Credit Parties entered into a second amendment to the Existing Credit Agreement (the "Second Amendment"), which reduces the maximum availability under the Existing Credit Facility to $36.5 million.

81.     As security for the payment and performance of their respective obligations (the "Obligations") under the Existing Credit Agreement and other Loan Documents (as defined in the Existing Credit Agreement), the Borrowers, the Guarantors and Personal Guarantor (as defined below) entered into certain security and/or documents (collectively, the "Security Documents"), including, but not limited to, the following:

(a)     Pursuant to a security agreement dated as of March 14, 2023 (the "Canadian GSA") granted by the Canadian Borrower, and the Canadian Guarantor in favor of the Agent, the Canadian Borrower and the Canadian Guarantor granted a continuing security interest in all of is present and after-acquired personal property to the Agent.

(b)     Pursuant to a security agreement dated as of March 14, 2023 (the "US GSA") granted by the US Borrower, and the US Guarantor in favor of the Agent, the US Borrower and the US Guarantor granted a continuing security interest in all of their present and after-acquired personal property to the Agent.

(c)     Pursuant to a guarantee agreement dated March 14, 2023 (the "Canadian Borrower Guarantee") between the Canadian Borrower in favor of the Agent, the Canadian Borrower irrevocably and unconditionally guaranteed the due and punctual

24

payment and the due performance of the Obligations (as such term is defined in the Existing Credit Agreement) of the US Borrower.

(d)    Pursuant to a guaranty agreement dated March 14, 2023 (the "US Borrower Guaranty") by the US Borrower in favor of the Agent, the US Borrower irrevocably and unconditionally guaranteed the due and punctual the payment of the Guaranteed Obligation (as such term is defined in the US Borrower Guaranty) of the Canadian Borrower.

(e)    Pursuant to a guarantee agreement dated March 14, 2023 (the "Canadian Guarantee") by the Canadian Guarantor in favor of the Agent, the Canadian Guarantor irrevocably and unconditionally guaranteed the due and punctual payment and the due performance of the Obligations (as such term is defined in the Existing Credit Agreement) of the Borrowers.

(f)    Pursuant to a guaranty agreement dated March 14, 2023 (the "US Guaranty") between the US Guarantor and the Agent, the US Guarantor irrevocably and unconditionally guaranteed the due and punctual payment of the Guaranteed Obligations (as such term is defined in the US Guarantee) of the Borrowers.

(g)    Pursuant to a limited recourse guarantee dated March 14, 2023 (the "Limited Recourse Guarantee") between Brett Farren (the "Personal Guarantor") and the Agent, the Personal Guarantor irrevocably and unconditionally guaranteed the due and punctual payment and the due performance of the Obligations (as such term is defined in the Existing Credit Agreement) of the Borrowers, limited to a maximum amount of USD $5 million.

67719/0001-47558774v2

(h)     Pursuant to a notice of intention dated March 1, 2023 and a special security in

respect of specified property or classes of property described in Section 427 of the

Bank Act (Canada) (the "Bank Act") dated March 14, 2023 (collectively, the "Bank

Act Security"), the Canadian Borrower gave the Agent security under Section 427

of the Bank Act.

(i)     Pursuant to a deed of movable hypothec dated as of March 15, 2023 and registered

at the Register of Personal and Movable Real Rights (Quebec) under number 23-

0296530-0001 (the "Movable Hypothec") granted by the Canadian Borrower in

favour of the Agent, the Canadian Borrower granted a movable hypothec without

delivery over the French language description of Hypothecated Property (*Biens

hypothéqués*) as security for the obligations purported to be secured thereby and for

the sum of $60,000,000, with interest thereon from the date thereof at the rate of

25% per annum in favour of the Agent.

82.     As of April 24, 2024, the total balance under the Existing Credit Facility is

approximately USD $31.6 million.

**E.     Retail Loan**

83.     In addition, Fashion Canada is indebted to Retail under a secured

promissory note dated March 14, 2023 (the "Promissory Note"), pursuant to which Fashion

Canada has promised to pay on demand to Retail a principal amount of USD $10 million, subject

to the Subordination Agreement (as defined below). The Promissory Note is secured by a general

security agreement, dated March 14, 2023 (the "Fashion GSA"), whereby Fashion Canada granted

a security interest to Retail in all of its present and after-acquired undertaking and property as

26

security for the Obligations (as such term is defined in the Fashion GSA) under the Promissory Note.

84.     The Promissory Note evidences a loan in the amount of USD $10 million from Retail to Fashion Canada to fund the purchase of the equity interests of Ted Baker Canada and Ted Baker Limited.

### F.     The Subordination Agreement

85.     Pursuant to a postponement, subordination and standstill agreement dated March 14, 2023 (the "Subordination Agreement") by Retail to the Senior Lenders and the Agent, and acknowledged by Fashion Canada, *inter alia*, all debts, liabilities and obligations owing by Fashion Canada to Retail were subordinated and postponed to all debts, obligations and liabilities owed by the Borrowers to the Senior Lenders and the Agent under the Existing Credit Agreement.

### G.     Letter Agreement

86.     On March 13, 2023, in connection with the NODL License Agreement, Ted Baker Canada and Ted Baker Limited and NODL entered into a Letter Agreement with CIBC (the "Letter Agreement"), in its capacity as the Senior Lender, which provides for certain rights to CIBC in the event that Ted Baker Canada and Ted Baker Limited receive a notice of default pursuant to the Existing Credit Agreement.

### EVENTS LEADING UP TO THE CCAA FILING

87.     Following the Acquisitions, the Debtors commenced operations with a goal to achieve profitability within the year. Since that time, however, the Debtors' financial and operation performance has struggled and deteriorated to the point of no longer being sustainable. The Debtors have failed to deliver free cash flow since June 2023. Over the last year, Ted Baker NA has underperformed relative to budget and revenues have significantly declined. The following summarizes some of the main causes of the financial and operational struggles.

27

DocuSign Envelope ID: 8C93A9CD-985F-4905-AB5C-79D3AA624FF5

### H.    Supplier Delays

88.    Until December 31, 2023, NODL (as succeeded by ABG UK) and AARC, a retail and e-commerce operating partner for the Ted Baker brand in the UK and Europe, were responsible for the payment of all suppliers in the Ted Baker supply chain, including the payment of merchandise ordered by Ted Baker NA. Over the course of the summer of 2023, Ted Baker NA would advance funds to NODL (or ABG UK) and AARC in order to purchase merchandise, however, these operating partners were not paying the suppliers on time as a result of their own financial difficulties. This led directly to suppliers holding shipments of merchandise and/or short shipping to Ted Baker NA (and others), creating both costly delays in the receipt of merchandise but also impacting the right merchandise levels and product mix.

89.    In August 2023, Ted Baker NA, in agreement with ABG, transitioned merchandise payments away from AARC to PDS until AARC would confirm that it would pay the suppliers promptly. Unfortunately, by the fall of 2023, these product delays persisted due to outstanding payments by AARC to the manufacturers, resulting in mounting financial losses. Although the Debtors eventually began to work out arrangements to pay suppliers and manufacturers directly, the delays permanently impacted their ability to have merchandise delivered to the Ted Baker NA retail stores in time for the upcoming season. The Debtors communicated with ABG consistently about these issues, but no resolution was reached.

### I.    Acceleration of Payment Terms

90.    In addition, in the lead up to and following NODL being placed into administration in the UK in March 2024, key suppliers and manufacturers (e.g., Pandora Prod SRL) began demanding upfront payments. This reduction in ordinary course trade term has had a material direct negative impact on the Debtors available working capital.

### J.    Delays in the Development of New Tech Stack

67719/0001-47558774v2

91.     Following the closing of the Ted Baker Acquisition, Ted Baker Canada and Ted Baker Limited were required to develop and migrate to their own technology platform (*i.e.*, a new Tech Stack).

92.     While the Debtors always understood that a new Tech Stack would eventually need to be developed, the timeline was accelerated as a result of AARC signing a license agreement with ABG and indicating that it would be decommissioning the existing Tech Stack within 60 days. The Debtors were required to engage a developer (Retail) to design and build a new Teck Stack on a very compressed timeline. This ultimately turned out to be a false timeline, as AARC did not ultimately decommission the existing Tech Stack platform. However, the transition from the existing Tech Stack to the new Tech Stack during the busiest selling season exacerbated the supply delays experienced by Ted Baker NA described above.

## K.     E-Commerce Issues

93.     In late June 2023, ABG informed the Debtors that, notwithstanding that the Debtors had purchased the right to use the tedbaker.com URL and the tedbaker.ca URL for its e-commerce business as part of the Ted Baker Acquisition, ABG believed that AARC was in greater need for the tedbaker.com URL, given that current sales in Europe were greater than North American sales, and because uncoupling the tedbaker.com URL from the existing global platform would be challenging. ABG proposed, instead, that Ted Baker Limited be given the right to use tedbaker.us URL. The Debtors conducted an analysis which forecasted that the change to tedbaker.us would result in at least USD $3 million in lost revenue, given that all existing Ted Baker advertisements were linked to tedbaker.com.

94.     Ultimately, after a series of negotiations, Ted Baker Limited agreed to relinquish the right to use the tedbaker.com URL in consideration for a USD $1.875 million payment that was made in December 2023. However, the Debtors are now of the view that ABG

29

has not compensated the Debtors for the full extent of the losses incurred, including the disruption
to relationships with the Debtors' online customer base as a result of moving the rights to use the
tedbaker.com URL to AARC.

### L.  Poor Sales Performance

95.    In addition to the above, the Ted Baker NA business has been plagued by
poor sales performance over the past year. For the 11 months ended December 31, 2023, Ted Baker
NA significantly underperformed expectations, generating sales and EBITDA of USD $145
million and USD ($5.3) million, respectively, and a net loss of over USD $11.3 million

96.    During January through April YTD 2024, Ted Baker NA experienced
negative cash flow in excess of USD $5 million due to a combination of poor sales performance
(trending 30% below the prior year), and the supply chain and other issues described above.

### M.  Funding Discussions with ABG

97.    In February 2024, the Debtors requested funding from ABG in Ted Baker
NA in order to address their mounting liquidity challenges. ABG advised that it was not interested
in any of the proposals advanced by the Debtors. At the time, ABG was experiencing financial
issues with NODL, and subsequently, NODL was placed into Administration in the UK.

98.    In April 2024, in light of the mounting liquidity challenges, the Debtors
reiterated their request that ABG fund the Ted Baker NA business. Several solutions were
presented by the Debtors; however, all such proposals were rejected.

### N.  Urgent Need for Relief

99.    As a result of the events described above, the Debtors face significant
liquidity challenges which threaten their ability to continue as a going concern. Overall, their
negative cash flow and working capital issues have caused a strain on their borrowing base,
resulting in an over advance position on the borrowing base, which is a default under the Existing

DocuSign Envelope ID: 8C32A9CD-985F-4905-AB5C-79D3AA624565

Credit Agreement. Without access to further funding, Debtors cannot pay their obligations (including payroll) in the ordinary course. The Debtors are therefore insolvent and cannot meet their liabilities and obligations as they come due.

100.    The Debtors' liquidity constraints have resulted in significant arrears owing to ABG pursuant to the License Agreements. As described above, Ted Baker Limited and Ted Baker Canada were required to pay amounts totaling USD $2,014.960 ($1,818,085 in respect of Ted Baker, $93,750 in respect of Brooks Brothers, and $103,125 in respect of Lucky Brand) to ABG under the License Agreements by April 1, 2024. The Debtors reached out to AGB to inquire whether any accommodations could be made in respect of the Missed April Payments, which attempts were unsuccessful. To date, these payments have not been made.

101.    As a result of the Missed April Payments, on or about April 17, 2024, Ted Baker Limited and Ted Baker Canada received Notices of Breach from ABG for the amounts owing under its three License Agreements with ABG. The License Agreements provide for a five business day cure period, which cure period expires April 25, 2024. The termination of the Debtors' License Agreements would cause the Debtors and their constituents irreparable and irreversible harm. The Debtors reserve all rights with respect to, among other things, ABG, the received notice and the License Agreements

102.    The Debtors are also three months in arrears on amounts owing to Future Forwarding, pursuant to the Future Agreement, totaling USD $2.4 million. The Debtors have received notice from Future Forwarding that it will cease shipping Ted Baker product if these outstanding payments are not received.

103.    In addition, the Debtors recently discovered that certain sales taxes are owing to the Canada Revenue Agency ("CRA"). More specifically, pursuant to the Lucky Brand

31

DocuSign Envelope ID: 8C93A9CD-985F-4905-AB5C-79D3AA624565

and Brooks Brothers TSAs, during the period October 2023 to March 2024, each of the respective Sellers collected all sales and sales tax on behalf of Ted Baker Canada, and then flowed the funds to Ted Baker Canada, net of all costs paid on their behalf. During this period, sales tax was collected by the Sellers and flowed to Ted Baker Canada; however, through inadvertence, neither party remitted the net sales tax to the CRA.

104.    Ted Baker Canada has been in discussions with the CRA regarding a 6-month payment plan, but nothing has been documented as yet and no payments have been made to the CRA on account of the sales tax arrears. Starting in March, 2024, the Debtors began remitting HST in the ordinary course.

105.    The Debtors also owe approximately USD $1 million in property taxes to the landlord of Ted Baker's 5th Avenue location in New York. The landlord for that location has a letter of credit with NODL. The lease expires on July 31, 2024.

106.    Furthermore, there is also approximately USD $2.6 million of inventory in transit (inclusive of unpaid duties) and in excess of USD $14 million owing by the Debtors to merchandise vendors and critical logistics and IT vendors.

107.    The Senior Lender has advised that, in light of the over advance position on the borrowing base, it will not permit further draws under the Existing Credit Agreement outside the CCAA and these proceedings and without the relief provided for in the proposed Initial Order and sought via the Provisional Relief Motion.

108.    Following consideration of available options and alternatives, and in light of the imminent expiry of the cure period under the License Agreements and the risk of non-shipment of inventory from the Distribution Center (among other things), the Debtors have determined with the assistance of their legal advisors that the best path to maximize shareholder

value is to commence CCAA proceedings and seek recognition of such proceedings under Chapter

15 of the Bankruptcy Code.

<u>**RECOGNITION AND OTHER RELIEF REQUESTED**</u>

109.    In furtherance of the above-outlined objectives, the Foreign Representative

has filed certain motions and proposed orders and respectfully requests that the Court consider

entering the proposed orders granting such motions. I have reviewed each of the motions and

proposed orders (including any exhibits thereto). The facts set forth therein are true and correct to

the best of my knowledge, information, and belief.

**O.    Recognition of the Canadian Proceedings as a Foreign Main Proceeding**

110.    The Foreign Representative has filed, concurrently herewith, the Verified

Petition, which seeks entry of an order (i) recognizing the Canadian Proceedings under sections

1515, 1517 and 1520 of the Bankruptcy Code (provisional relief pursuant to section 1519 is not

being sought);  (ii) recognizing the Foreign Representative as the "foreign representative," as

defined in section 101(24) of the Bankruptcy Code, in respect of the Canadian Proceedings; (iii)

recognizing and enforcing the Initial CCAA Order (as it may be amended and restated or

superceded); (iv) granting a stay of execution against the Debtors' assets and applying section 362

of the Bankruptcy Code in these Chapter 15 Cases pursuant to sections 1520(a)(1), 1521(a) and

105(a) of the Bankruptcy Code; and (v) granting certain additional relief pursuant to section 1521

of the Bankruptcy Code.

111.    I believe that recognition of Ted Baker Canada as "foreign representative"

as defined in section 101(24) of the Bankruptcy Code and recognition of the Canadian Proceedings

as "foreign main proceedings" are consistent with the purposes of chapter 15 and will allow the

Debtors to effectuate an orderly wind-down of their businesses in the most efficient manner while

maximizing value for, and protecting the rights of, their creditors.

67719/0001-47558774v2

112.    I understand that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign main proceeding" if such foreign proceeding is pending in the country where the debtor has its "center of main interests," also referred to as "COMI." The Debtors' COMI is Canada, for several reasons. While the Debtors run a consolidated business, with operations in both Canada and the United States, those operations are functionally and operationally integrated such that the US business is entirely dependent on the Canadian business and key personnel in Canada.  In other words, Canada is where the Debtors' "nerve center" is located.  In addition, the following facts demonstrate the Company's COMI in Canada:

(i)    All or substantially all of the key operational and strategic and corporate decision-making relating to the Debtors' business and all major stakeholder negotiations, including all negotiations with ABG and its affiliates were and are primarily conducted in Canada;

(ii)    All other members of the Debtors' management report to either myself or Mr. Farren, both of whom reside in Canada.

(iii)    IT leadership for the Debtors, including strategy, development, implementation, and people management, is performed by employees of Retail that are based out of the head office in Mississauga, Ontario.

(iv)    The Debtors' revolving credit facility is with CIBC, a Canadian bank.

(v)    The Debtors have a centralized Cash Management System for the collection, transfer and disbursement of funds, which is maintained and administered by treasury and finance personal based in Fashion Canada's head office in Canada and Ted Baker Limited's office in New York.  The Company has 45 bank accounts, 41 of which are held in Canada at CIBC,

67719/0001-47558774v2

DocuSign Envelope ID: 8C32A9CD-985F-4905-AB5C-79D3AA624565

with only four held in the US. The balance outstanding under the Existing Credit Facility is paid down on a daily basis through the automatic sweeping of certain Canadian Bank Accounts.

(vi)    The Debtors' ultimate shareholders (including myself and Mr. Farren) are located in Canada.

**P.    Need for Provisional Relief**

113.    In addition to seek recognition on a final basis, the Foreign Representative also requests certain provisional relief. Pending recognition of the Canadian Proceedings, the Foreign Representative seeks provisional relief to enjoin collection efforts against the Debtors and their assets, as well as to protect potentially valuable and critical contractual relationships. This relief is necessary to avoid immediate and irreparable harm to the Debtors and their assets if U.S. creditors and contract parties begin a "race to the courthouse" or resort to other self-help remedies resulting in a piece-meal and preferential liquidation and distribution of assets, rather than an orderly realization and distribution of value according to legal priorities.

114.    As indicated by a 13-week cash flow projection prepared by A&M (attached as Appendix A to the Pre-Filing Report of the Proposed Monitor hereto as **Exhibit B**), the Debtors require access to liquidity. Interim financing is needed to provide stability and fund operations for a limited period of time while the Debtors consider the next steps in these proceedings.

115.    In order to avoid an abrupt shutdown of their business, the Senior Lender is prepared to permit Ted Baker Canada and Ted Baker Limited to continue to borrow under the Existing Credit Agreement (each, an "Interim Borrowing" and collectively, the "Interim Borrowings"), provided that (i) such Interim Borrowings are to fund obligations which the Debtors, with the consent of the Monitor and the Interim Lender, deem to be necessary for the preservation of the Property or their business, (ii) such Interim Borrowings do not, individually or in the aggregate, exceed USD $7 million, (iii) such Interim Borrowings under the Existing Credit

35

DocuSign Envelope ID: 8C93A9CD-985F-4905-AB5C-79D3AA624555

Facility accrue interest at the rates set out in the Existing Credit Agreement, (iv) Fashion Canada and Fashion Services are deemed to guarantee the Interim Borrowings together with all interest accrued thereon and costs and expenses incurred in connection therewith in the same manner as the other Obligations (as defined in the Existing Credit Agreement) that they have guaranteed under the Existing Credit Agreement and the loan and security documents provided by them in connection therewith, without the need for any further documentation or guarantee from Fashion Canada or Fashion Services, (v) such Interim Borrowings mature on May 8, 2024, and (vi) unless the Interim Lender provides its written waiver, the United States Bankruptcy Court shall have granted an Order pursuant to the Bankruptcy Code: (a) provisionally recognizing, ordering and giving effect to this Order and the Interim Lender's Charge in the United States, and (b) granting such other provisional relief that is sought by the Debtors, at the request of the Interim Lender.

116.    The Foreign Representative requests provisional relief to grant the Debtors' lender certain protections under the Bankruptcy Code.  Without the protections afforded to lenders under the Bankruptcy Code, the Debtors will not have funding required to continue their business operations and fund their restructuring proceedings, which will significantly impair and potentially result in irreparable damage to the value of the Debtors' assets.

117.    The Debtors also seek provisional relief, including, without limitation,  a temporary restraining order to obtain the benefits of a stay of proceedings, prevent the enforcement of rights and remedies against the Debtors, including under or in connection with any License Agreements and to protect the Debtors and their Property from any potential action.  It is necessary for this Court to recognize and approve on a provisional basis the relief requested in the Initial Order.

67719/0001-47558774v2

118.    I believe that the provisional relief requested is necessary and appropriate and is in the best interests of the Debtors, their creditors, their many employees, and other parties in interest.

**Q.    Motion for Joint Administration**

119.    Joint Administration is warranted in these Chapter 15 Cases. The Debtors are affiliated entities with intertwined financial affairs and business operations, and joint administration will ease the administrative burden on the parties and this Court and its personnel. The Foreign Representative anticipates that various notices, applications, motions, other pleadings, hearings, and orders in these cases will affect each of the Debtors. The failure to administer these Chapter 15 Cases jointly would result in duplicative pleadings and service. Such duplication would impose unnecessary expenses on all parties.

120.    Joint administration will permit this Court to utilize a single docket for the jointly administered cases and combine notices to creditors and other parties in interest. Further, joint administration will protect parties in interest by ensuring that they will be apprised of all matters. Accordingly, I believe entry of an order granting the relief requested in the Motion for Joint Administration is in the best interest of the Debtors and all parties in interest.

**R.    Scheduling Motion**

121.    By the Scheduling Motion, the Foreign Representative seeks an order (i) scheduling the Recognition Hearing and (ii) specifying the form and manner of service of notice thereof. It is my belief that service of the notice of the Recognition Hearing in the manner proposed in the Scheduling Motion will provide the Debtors' parties in interest due and sufficient notice of the Recognition Hearing and objection deadline.

*[Signature Page to Follow]*

67719/0001-47558774v2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: April 24, 2024

_Antoine Adams_
Antoine Adams
Corporate Secretary

67719/0001-47558774v2